UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VANESSA PERDOMO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FULLBEAUTY BRANDS OPERATIONS, LLC,<br><br>Defendant. | No. 3:25-cv-5844<br><br>NOTICE OF REMOVAL<br>(Pierce County Superior Court Case No. 25-2-10928-9) |

TO: Clerk, United States District Court for the Western District of Washington

AND TO: Vanessa Perdomo, and her Attorneys of Record

Defendant FullBeauty Brands Operations, LLC ("FullBeauty"), hereby gives notice that it is removing the above-captioned case, originally filed in the Superior Court for Pierce County, Case No. 25-2-10928-9, to the United States District Court for the Western District of Washington. FullBeauty removes the case pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 on the grounds set forth below.

1. On August 20, 2025, Plaintiff Vanessa Perdomo, acting individually and on behalf of a purported class of persons she seeks to represent, served the Complaint and Summons on FullBeauty's registered agent, Corporation Service Company ("CSC"). Pursuant to 28 U.S.C. § 1446(a), a copy of the proof of service and Summons and Complaint is attached as Exhibit A. The documents that comprise Exhibit A constitute all process, pleadings, and orders served upon



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

FullBeauty. *See* 28 U.S.C. § 1446(a). Pursuant to LCR 101(b), the Complaint is separately attached as Exhibit B.

2. Removal of this action is therefore timely because FullBeauty filed this Notice of Removal within 30 days after the service of the Summons and Complaint. *See* U.S.C. § 1446(b); Fed. R. Civ. P. 6(a).

3. FullBeauty removes this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453, on the basis that (a) this action is a proposed "class action" as defined in 28 U.S.C. § 1332(d)(1)(B); (b) at least one member of the proposed class is a citizen of a state different than FullBeauty; (c) the number of members of the proposed class is not less than 100; and (d) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

**Proposed Class Action**

4. Plaintiff brings this case as a proposed class action, and appears to seek certification of the putative class under Washington Superior Court Civil Rule ("CR") 23. *See* Compl. ¶¶ 9, 58–68 (Ex. B). Washington courts have long held that CR 23 and its federal counterpart are "substantially similar." *See, e.g.*, *Summers v. Sea Mar Cmty. Health Ctrs.*, 541 P.3d 381, 388 (Wash. Ct. App. 2024). Therefore, this action is a proposed "class action" under 28 U.S.C. § 1332 (d)(1)(B), defined as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative person as a class action."

**Minimal Diversity**

5. Under 28 U.S.C. § 1332(d)(2)(A), a district court may assert jurisdiction over a class action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." Such minimal diversity exists among the parties here.

6. As alleged in the Complaint, Plaintiff is domiciled in Washington. Compl. ¶ 10. Plaintiff seeks to represent a class that comprises the following: "[a]ll Washington residents who,



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

during the Class Period, received promotional emails from Eloquii with subject lines advertising sales or discounts." *Id.* ¶ 58.

7. Defendant FullBeauty is an Indiana limited liability company with its principal place of business in New York (as Plaintiff acknowledges, Compl. ¶ 12). FullBeauty's sole member is a citizen of Indiana. No other defendants are named in this action. Accordingly, complete diversity exists between (i) Plaintiff and the putative class she seeks to represent and (ii) FullBeauty, thereby satisfying the requirement of minimal diversity under 28 U.S.C. § 1332(d)(2)(A).

**The Putative Class Numbers Not Less than 100**

8. The number of members of the class that Plaintiff proposes is not less than 100 persons. *See* 28 U.S.C. § 1332(d)(5)(B). Plaintiff alleges that "[t]here are at least thousands of Class members in Washington." Compl. ¶ 63.

**The Amount in Controversy Is Over $5,000,000**

9. "In a class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). This is an "action in which the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2).

10. "In measuring the amount in controversy, a court must assume that the allegations in the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *see also Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (same). "[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (citation omitted) (emphasis in original).

11. Where, as here, a complaint fails to state an amount in controversy, "the defendant's notice of removal may do so," and the defendant need only submit a short and plain statement that "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co.,*



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*LLC v. Owens*, 574 U.S. 81, 84 (2014). That statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. If "the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).

12. Here, Plaintiff seeks "the greater of actual damages and statutory damages of $500 per email that violates CEMA," and "treble damages, which are permitted under the CPA, including for CEMA violations." Compl. ¶ 93. Plaintiff also seeks "[r]easonable attorneys' fees and costs, as allowed by law" and injunctive relief. *Id.* ¶¶ 94, 96. The Court may consider these types of alleged damages, aggregated on a class-wide basis, when conducting the amount-in-controversy calculation. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (injunctive relief and state law claims authorizing attorneys' fees may be taken into account when determining the amount in controversy for federal diversity jurisdiction).

13. Plaintiff alleges that "Defendant is constantly sending commercial emails to recipients on the website's mailing list, typically multiple times per week" and that "Plaintiff and Class members received such emails from Defendant." Compl. ¶ 40. Plaintiff further alleges that "Defendant sent at least thousands of emails to Washington recipients." *Id.* Plaintiff also alleges that the putative class consists of "thousands of Class members." *Id.* ¶ 63.

14. Without conceding and outright denying any purported liability, based on reasonable assumptions, FullBeauty's business records indicate that, between August 18, 2021 and the present date, more than 12,000 of the emails at issue in Plaintiff's Complaint were sent to Washington residents. With $500 in alleged minimum damages per email, the amount in controversy exceeds $5,000,000, even before accounting for Plaintiff's requested attorney's fees, treble damages, or injunctive relief. Accordingly, the alleged aggregated damages, fees, and costs Plaintiff seeks surpass CAFA's $5,000,000 amount-in-controversy requirement.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Removal Is Proper**

15. Pursuant to 28 U.S.C. § 1453, a suit over which a district court would have original jurisdiction under CAFA may be removed to federal court from state court, as provided by 28 U.S.C. §§ 1441(a) and 1446(a). Because this Court could have asserted original jurisdiction over this case, FullBeauty is entitled to remove the present action to the Court.

16. Pierce County Superior Court lies within the Western District of Washington. 28 U.S.C. § 128. Accordingly, removal to this district is proper. *See* 28 U.S.C. § 1441(a). The Tacoma Division is the proper division for this matter, as it is being removed from Pierce County. *See* LCR 3(e)(1).

17. Pursuant to 28 U.S.C. § 1446, written notice of the filing of this Notice of Removal and the removal of the state court action will be served on Plaintiff through her counsel of record. A copy of this Notice of Removal is being filed promptly with the Clerk of the Pierce County Superior Court, as required by 28 U.S.C. § 1446(d).

18. The removal of this action terminates all proceedings in the Superior Court. *See* 28 U.S.C. § 1446(d).

19. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of FullBeauty's right to assert any defense. FullBeauty reserves the right to assert all applicable claims and defenses in response to the Complaint.

**LCR 101(b) Requirements Are Met**

20. In accordance with LCR 101(b), FullBeauty has filed contemporaneously with this Notice of Removal a copy of the operative Complaint, which is separately attached as Exhibit B. A certificate of service which lists all counsel who have appeared in the action with their contact information, including email addresses, is appended to the end of this Notice of Removal. FullBeauty has also filed a completed Civil Cover Sheet, which the Court's ECF system will automatically append to this Notice of Removal in ECF.

WHEREFORE, the above-entitled action is removed from the Pierce County Superior Court to the United States District Court for the Western District of Washington.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 19th day of September, 2025.

Davis Wright Tremaine LLP

By *s/ Lauren B. Rainwater*
Lauren B. Rainwater, WSBA #43625

By *s/ Rachel Herd*
Rachel Herd, WSBA #50339

By *s/ Caleah N. Whitten*
Caleah N. Whitten, WSBA #60209

By *s/ Ardie Ermac*
Ardie Ermac, WSBA #60755

920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206-622-3150
E-mail: laurenrainwater@dwt.com
E-mail: rachelherd@dwt.com
E-mail: caleahwhitten@dwt.com
E-mail: ardieermac@dwt.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of September, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and I hereby certify that a copy was emailed and mailed by United States Postal Service to the following counsel.

Cody Hoesly, WSBA #41190
BARG SINGER HOESLY PC
121 SW Morrison St., Suite 600
Portland, OR 97204
Tel.: 503-241-3311
E-mail: choesly@bargsinger.com

Alexander E. Wolf, *pro hac vice forthcoming*
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
280 South Beverly Drive, PH
Beverly Hills, CA 90212
Tel.: 872-365-7060
E-mail: awolf@milberg.com

William J. Edelman, *pro hac vice forthcoming*
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel.: 771-474-1121
E-mail: wedelman@milberg.com

Tyler E. Ewigleben, *pro hac vice forthcoming*
JENNINGS & EARLEY PLLC
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Tel.: 501-255-8569
E-mail: tyler@jefirm.com

*Attorneys for Plaintiff*

DATED this 19th day of September, 2025.

By s/ *Lauren B. Rainwater*
Lauren B. Rainwater, WSBA #43625



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# EXHIBIT A

CSC

**TMM / ALL**
**Transmittal Number: 32095778**
**Date Processed: 08/21/2025**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Joshua McFarland<br>Fullbeauty Brands, Inc.<br>2300 Southeastern Ave<br>Indianapolis, IN 46201-4001 |
| **Electronic copy provided to:** | Lauren Gee |

| | |
|---|---|
| **Entity:** | Fullbeauty Brands Operations, LLC<br>Entity ID Number 3765849 |
| **Entity Served:** | Fullbeauty Brands Operations, LLC |
| **Title of Action:** | Vanessa Perdomo vs. Fullbeauty Brands Operations, LLC |
| **Matter Name/ID:** | Vanessa Perdomo vs. Fullbeauty Brands Operations, LLC (17779435) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Pierce County Superior Court, WA |
| **Case/Reference No:** | 25-2-10928-9 |
| **Jurisdiction Served:** | Indiana |
| **Date Served on CSC:** | 08/20/2025 |
| **Answer or Appearance Due:** | 60 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Milberg Coleman Bryson Phillips Grossnian PLLC<br>503-241-3311 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF PIERCE

| | |
|---|---|
| VANESSA PERDOMO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FULLBEAUTY BRANDS OPERATIONS, LLC,<br><br>Defendant. | Case No. 25-2-10928-9<br><br>SUMMONS (60 Days) |

**TO: FullBeauty Brands Operations, LLC**

A lawsuit has been started against you in the above-entitled Court by Vanessa Perdomo, individually and on behalf of all others similarly situated, Plaintiff. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for the Plaintiff within 60 days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff are entitled to what it asks for because you have not responded. If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiff files this lawsuit with the Court. If you do so, the demand must be in writing and must be served upon the Plaintiff. Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the Court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

Dated: August 18, 2025.

Cody Hoesly, WSBA #41190
choesly@bargsinger.com
121 SW Morrison Street, Suite 600
Portland, Oregon 97204
Telephone: 503-241-3311
Attorney for Plaintiff

STATE OF OREGON )
) ss.
COUNTY OF MULTNOMAH )

I, the undersigned attorney of record for the plaintiff, certify that the foregoing is an exact and complete copy of the original summons in the above-entitled actions.

Attorney for Plaintiff

TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS: You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual(s) or other legal entity(ies) to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.

Attorney for Plaintiff

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

August 18 2025 1:12 PM

PIERCE COUNTY CLERK
NO: 25-2-10928-9

SUPERIOR COURT OF THE STATE OF WASHINGTON
PIERCE COUNTY

| | |
|---|---|
| VANESSA PERDOMO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>FULLBEAUTY BRANDS OPERATIONS, LLC,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |



Milberg Coleman Bryson Phillips Grossman PLLC
280 South Beverly Drive, PH
Beverly Hills, CA 90212

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. PARTIES ..... 2
III. JURISDICTION AND VENUE ..... 2
IV. FACTUAL ALLEGATIONS ..... 3
A. Defendant's False and Misleading Emails Regarding Discounts. ..... 3
B. Defendant's Emails to Plaintiff and Class Members Violate CEMA and the CPA. ..... 10
C. Defendant's Deceptive Emails Violate Federal Law. ..... 12
D. Research Confirms That Time-Limited Discounts Influence Consumer Behavior and Perceptions of Value. ..... 14
E. Plaintiff Vanessa Perdomo. ..... 15
F. No Adequate Remedy at Law. ..... 15
V. CLASS ACTION ALLEGATIONS ..... 15
VI. CLAIMS ..... 17
VII. JURY DEMAND ..... 20
VIII. PRAYER FOR RELIEF ..... 20

## I. INTRODUCTION

1. This is a putative class action under Washington law brought to address deceptive and unlawful emails that plague consumers' inboxes. The Washington legislature, concerned with deception in emails, enacted the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, which, among other things, prohibits any person from sending a commercial email with a false or misleading subject line. RCW 19.190.020.

2. Defendant FullBeauty Brands Operations, LLC ("Defendant") sells, markets, and manufactures clothing and accessories (the "Products"). The Products are sold through Defendant's website www.Eloquii.com.

3. Defendant markets its Products by email to Washington residents. The subject lines in these emails often promote "sales" and discounts on the Products. However, the subject lines are false, misleading, and unlawful because they promote fictitious discounts, under false time restraints, from fictitious regular and former prices.

4. Getting an advertised bargain is important to consumers. Consumers are more likely to purchase an item if it is advertised as a good deal. Further, if a sale is advertised as ending soon, consumers are even more likely to buy now, rather than wait, comparison shop, and/or buy something else.

5. There is nothing wrong with a legitimate sale. But a fictitious sale—that is, one with made-up regular and former prices or made-up expirations—is deceptive and illegal. And advertising false and misleading discounts in the subject line of a promotional email violates CEMA and the Washington Consumer Protection Act ("CPA"). *Brown v. Old Navy LLC*, 567 P.3d 38 (Wash. 2025).

6. Defendant's sales are not legitimate sales. Instead, the purported discounts are false and highly misleading, and the sales are regularly available. And Defendant promotes these fake discounts by sending emails with false and misleading subject lines.

7. For example, Defendant's emails contain subject lines like: "TODAY ONLY: 60% off" or "Last Chance: Up to 60% Off!" These subject lines lead reasonable consumers to believe that if they don't buy before the sale ends, they won't be able to get the advertised discount. In truth, when



Milberg Coleman Bryson Phillips Grossman PLLC
280 South Beverly Drive, PH
Beverly Hills, CA 90212

one supposed sale ends, it is replaced by a similar sale shortly thereafter and the Products do not immediately return to supposed regular or pre-sale. The deals are not genuinely time limited.

8. Defendant's emails also contain subject lines like "50% OFF EVERYTHING." These subject lines lead reasonable consumers to believe that there is a substantial sale in effect and Defendant's regular and former prices are normally much higher. In truth, Defendant's Products are almost always substantially discounted on the website, and the regular price on the website is actually the discounted price.

9. Plaintiff is a Washington resident who received Defendant's deceptive email advertisements. Plaintiff brings this case to protect Washington residents from Defendant's false and misleading emails about its purported limited-time discounts.

## II. PARTIES

10. Plaintiff Vanessa Perdomo is domiciled in Tacoma, Washington and has been a resident of Washington during the preceding four years.

11. The proposed class includes citizens of Washington.

12. Defendant FullBeauty Brands Operations, LLC is an Indiana limited liability company, whose members are all citizens of Delaware and/or New York. Defendant is headquartered in New York. Defendant owns the Eloquii brand.

## III. JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under the Washington State Constitution, which sets forth the jurisdiction of Washington Superior Courts. This Court also has subject matter jurisdiction under the Consumer Protection Act (CPA), RCW 19.86.090, and the Commercial Electronic Mail Act (CEMA), RCW 19.190.090, which give Washington Superior Courts jurisdiction over claims brought under CEMA and the CPA.

14. This Court has personal jurisdiction over Defendant under RCW 4.28.185. Defendant transacts business in Washington. The claims giving rise to this action arise from Defendant's transaction of business in this state and also Defendant's purposeful transmission of electronic mail messages to Washington residents. This Court also has personal jurisdiction over Defendant under

RCW 19.86.160 because Defendant engaged in conduct in violation of the CPA that had an impact in Washington. Finally, Plaintiff purchased Products from Defendant's website while in Washington and those Products were delivered to her address in Washington.

15. Venue is proper in Pierce County Superior Court because Defendant resides here for purposes of venue. RCW 4.12.025. At all relevant times, Defendant transacted business in Pierce County, including by selling products to customers living in Pierce County and by sending electronic mail messages to residents of Pierce County, including to Plaintiff.

## IV. FACTUAL ALLEGATIONS

### A. <u>Defendant's False and Misleading Emails Regarding Discounts.</u>

16. Defendant distributes, markets, and sells the clothing and accessory Products directly to consumers. The Products are sold through the website www.Eloquii.com.

17. Defendant's emails create the false impression that the Products' regular and former prices are higher than they truly are, the discounts are limited in time, and the discounts are genuine.

18. Defendant advertises steep discounts on the Products. These discounts consistently offer "up to __% off" the regular and former prices, or discounts in another fixed amount. Additionally, these discounts are often expressly advertised as ending soon. Defendant advertises these discounts extensively through emails to recipients on their mailing list who previously purchased from Eloquii.com. And this information is contained in the subject lines of emails.

19. These seem like great deals that will end soon. But the truth is that substantial discounts on the Products are consistently available. When one sale ends, another begins shortly thereafter. Consumers are being tricked into thinking they are getting a genuine discount when they are really just paying the regular price.

20. When Defendant advertises the percent-off discounts through emails with subject lines like "Up to 50% off," reasonable consumers interpret the sale advertisements to mean that recipients will get a discount off the former and regular prices charged by Defendant on the website in the recent past. In other words, reasonable recipients believe, for example, that they will receive "50% off" the former and regular prices charged on the website in the recent past, and those higher prices represent

the amount that consumers formerly had to pay for Defendant's goods before the sale began and represent the prices that consumers will have to pay in the future for Defendant's goods when the sale ends. This creates a sense of value and urgency: buy now, and you will receive something worth more than you pay for; or wait, and you will pay more for the same thing later.

21. In the subject lines of emails Defendant sends, Defendant does not qualify the "__% off" or time-limited promises with any conspicuous explanation that would even attempt to render them truthful and non-misleading. As a result, reasonable consumers reading Defendant's emails believe (1) Defendant is advertising substantial discounts off the regular and former prices charged by Defendant, (2) those discounts will disappear if they don't buy quickly, and (3) the Products are genuinely on sale.

22. For example, Defendant sent commercial emails to Plaintiff (and other class members) containing the following subject lines on the following dates.

a. 07/04/2023: 4th of July= 60% off!!!!!!!
b. 07/04/2023: 60% OFF IS ALMOST GONE!
c. 07/09/2023: ATTENTION!!! THIS SALE IS ENDING!
d. 07/23/2023: 60% OFF TODAY!!!!!!!!
e. 07/27/2023: 40% off NEW styles!
f. 08/06/2023: TODAY ONLY!
g. 08/13/2023: OMG: Up to 60% off!!
h. 08/13/2023: 60% OFF ENDS IN 5 HOURS!!!!
i. 08/14/2023: SURPRISE! Up to 60% off now extended!
j. 08/23/2023: EVERY DRESS IS ON SALE!!!!!!
k. 08/23/2023: UP TO 60% OFF ALL DRESSES!!!!!
l. 08/24/2023: Dress prices go up tomorrow!
m. 09/03/2023: ENDS AT MIDNIGHT!!!
n. 09/04/2023: ONE DAY ONLY!!
o. 09/04/2023: LAST CHANCE for 60% off
p. 09/13/2023: LAST CHANCE FOR 50% OFF EVERYTHING!!!
q. 09/14/2023: EXTENDED! OUR BEST SALE OF THE SEASON!
r. 09/14/2023: PRICES GO UP TOMORROW!!!
s. 10/04/2023: ⏰ FINAL HOURS: The Exclusive Event ⏰
t. 10/07/2023: Up to 50% off outerwear!
u. 10/15/2023: Every. Single. Dress & Jumpsuit Is On Sale!!!!!
v. 10/16/2023: REMINDER: All dresses are on sale!!!
w. 10/22/2023: Prices go up tomorrow!!!
x. 10/27/2023: 60% off holiday looks!

| | | |
|---|---|---|
| y. | 11/14/2023: | Black Friday Early Is Ending Soon!! |
| z. | 11/15/2023: | NOW EXTENDED: Black Friday Early! |
| aa. | 11/15/2023: | 🚨 FINAL HOURS FOR BLACK FRIDAY EARLY! 🚨 |
| bb. | 11/18/2023: | TODAY ONLY: 60% off |
| cc. | 11/25/2023: | You didn't miss it! Black Friday NOW EXTENDED! |
| dd. | 11/25/2023: | 60% OFF! |
| ee. | 11/27/2023: | Open to confirm your order |
| ff. | 12/10/2023: | TODAY ONLY: 60% off!!! |
| gg. | 12/10/2023: | Final Hours: 60% Off Ends Tonight! |
| hh. | 12/13/2023: | 60% off holiday styles!! |
| ii. | 12/14/2023: | Best-selling dresses up to 60% off |
| jj. | 12/21/2023: | TODAY ONLY: Sale. On. Sale. |
| kk. | 12/28/2023: | UP TO 80% OFF |
| ll. | 01/03/2024: | Up to 85% Off Ends At MIDNIGHT |
| mm. | 01/25/2024: | Hours Left for 50% Off |
| nn. | 02/19/2024: | TODAY ONLY: SALE! SALE! SALE! |
| oo. | 02/19/2024: | Up to 60% Off Everything?! |
| pp. | 03/06/2024: | 50% off dresses & jumpsuits!! |
| qq. | 03/10/2024: | Hurry! 50% off is ending today! |
| rr. | 03/17/2024: | GOING FAST: UP TO 50% OFF |
| ss. | 03/21/2024: | 60% OFF TODAY ONLY! |
| tt. | 03/29/2024: | TODAY ONLY: 60% OFF SALE |
| uu. | 03/29/2024: | 60% OFF IS ENDING SOON! |
| vv. | 04/02/2024: | 50% OFF EVERYTHING |
| ww. | 04/04/2024: | 50% off everything is going, going, almost gone... |
| xx. | 04/05/2024: | 50% OFF ENDS TONIGHT |
| yy. | 04/14/2024: | ENDS AT MIDNIGHT: 60% off |
| zz. | 04/17/2024: | Up to 50% off best-selling bottoms! |
| aaa. | 04/24/2024: | SAVE UP TO 75% OFF NOW! |
| bbb. | 04/25/2024: | Last Call for up to 75% off! |
| ccc. | 05/07/2024: | HURRY! 65% off until 2pm ET |
| ddd. | 05/17/2024: | FINAL HOURS to shop 60% off |
| eee. | 05/27/2024: | TODAY ONLY: 60% OFF SALE! |
| fff. | 06/21/2024: | Up to 80% off happening NOW! |
| ggg. | 07/04/2024: | 4th of July= EXTRA 60% off!!! |
| hhh. | 07/04/2024: | Extra 60% off is ending soon! |
| iii. | 07/22/2024: | EVERY DRESS IS ON SALE (!!!) |
| jjj. | 08/18/2024: | LAST chance: Extra 65% off! |
| kkk. | 08/28/2024: | Up to 60% Off Everything—This Weekend Only! |
| lll. | 08/31/2024: | Up to 60% Off Sitewide – Kick Off Your Long Weekend in Style! |
| mmm. | 09/01/2024: | Up to 60% off deals inside – Ends Tonight! |
| nnn. | 09/02/2024: | Last Chance: Up to 60% Off! |
| ooo. | 09/09/2024: | Limited Time Only Enjoy 50% Off All Pants - Shop Now! |
| ppp. | 09/12/2024: | 50% OFF EVERYTHING |
| qqq. | 09/13/2024: | PRICES GO UP TOMORROW!!! |
| rrr. | 10/06/2024: | Ends at Midnight: Up to 60% Off Everything! |



Milberg Coleman Bryson Phillips Grossman PLLC
280 South Beverly Drive, PH
Beverly Hills, CA 90212

| | | |
|---|---|---|
| sss. | 10/16/2024: | TODAY ONLY: 50% OFF ALL SALE, PLUS EXTRA 25% off 3+ items |
| ttt. | 10/29/2024: | Extra 50% Off All Sale! |
| uuu. | 11/03/2024: | UP TO 85% OFF NOW! |
| vvv. | 11/05/2024: | Up to 85% Off Until Midnight! |
| www. | 11/09/2024: | TODAY ONLY: 60% off |
| xxx. | 11/09/2024: | Final Hours: 60% Off Ends Tonight! |
| yyy. | 11/19/2024: | 50% Off + BACK IN STOCK |
| zzz. | 11/20/2024: | Now Extended: Black Friday Early! |
| aaaa. | 11/20/2024: | Final Hours: Black Friday Early!! |
| bbbb. | 11/20/2024: | Hours left (we really mean it!!) |
| cccc. | 11/23/2024: | 60% Off Your Fave Holiday Styles! |
| dddd. | 11/26/2024: | NEW + 50% OFF. GO! |
| eeee. | 11/27/2024: | 50% OFF & Dresses @ $29+? *Add to Cart* |
| ffff. | 11/30/2024: | SURPRISE! 60% OFF |
| gggg. | 12/05/2024: | 60% Off? Yes, Please! |
| hhhh. | 12/27/2024: | Cure the holiday hangover with *80% off* |
| iiii. | 12/29/2024: | OOPS—we dropped prices *even* more... |
| jjjj. | 02/17/2025: | ICYMI: up to 60% off *everything* |
| kkkk. | 03/12/2025: | 50% off ends at MIDNIGHT!!!! |
| llll. | 03/24/2025: | SALE ENDS AT MIDNIGHT |
| mmmm. | 03/28/2025: | 60% OFF ENDS TONIGHT |
| nnnn. | 04/13/2025: | Up to 60% off ends TONIGHT |
| oooo. | 04/25/2025: | Up to 75% off ends TONIGHT |
| pppp. | 05/18/2025: | Psst...*all* dresses up to 60% off |
| qqqq. | 05/26/2025: | Final hours Up to 60% off everything |

23. Reasonable recipients of these emails would believe that Defendant was offering a limited time sale that was ending soon. They would believe that, if they purchase during the sale, they will receive this genuine discount off the regular and former prices of the Products. And they would believe that, if they wait too long, then the sale will be over and the Products' prices would return to their regular prices.

24. But Defendant almost always offers discounts on the Products, and their sales do not end—they soon roll over into a "new" promotion that offers materially similar discounts. There are many such examples.

25. For instance, on August 13, 2023, Defendant sent emails with the subject lines "OMG: Up to 60% off!!" and "60% OFF ENDS IN 5 HOURS!!!!" But the next day, August 13, 2023,

Defendant sent an email stating "SURPRISE! Up to 60% off now extended!"—rendering the prior email subject lines false and misleading.

26. On August 23, 2023 and August 24, 2023, Defendant sent emails with the subject lines "UP TO 60% OFF ALL DRESSES!!!!!" and "Dress prices go up tomorrow!", respectively. But on August 25, 2023, Defendant instituted a new sale described as "50% off Select Styles + 40% Off Everything Else." So, one sale was promptly replaced by another, thus rendering the email subject lines false and misleading.

27. On September 4, 2023, Defendant sent emails with the subject lines "LAST CHANCE for 60% off" and "One Day Only!!", which referred to an "up to 60% off everything" sale. But on September 5, 2023, Defendant instituted a new sale described as "$19 & Up Select Styles + 40% Off Everything Else." On September 9, 2023, Defendant instituted a sale described as "50% Off Select Styles + 40% Off Everything Else." And on September 13, 2023, Defendant was running another "50% off everything" sale. Again, one sale was promptly replaced by another, thus rendering the email subject lines false and misleading.

28. On November 18, 2023, Defendant sent an email with the subject line "TODAY ONLY: 60% off." That subject line is false and misleading because (1) sales are regularly available on the website rather than "today only," and (2) the supposed discount is exaggerated as the regular price is actually the sale price.

29. On November 27, 2023, Defendant sent an email with the subject line "Open to confirm your order," but the body of the email only contains advertisements for Products on sale. Thus, the subject line was false.

30. To further confirm that Defendant regularly offers products at a discount sitewide or nearly sitewide, 23 screenshots randomly selected and collected by the Internet Archive's Wayback Machine were reviewed covering the January 2024 to April 2024 period. On each of these days, Defendant advertised sitewide or virtually sitewide discounts on the website on its homepage.

January 6, 2024 ($29 and up select styles, up to 50% off everything else)




January 12, 2024 (50% off select styles, 40% off everything else)




January 17, 2024 (50% off select styles, 40% off everything else)




January 22, 2024 ($19 and up select styles, 40% off everything else)




January 24, 2024 (50% off select styles, 40% off everything else)




January 27, 2024 ($19 and up select styles, 40% off everything else)




January 28, 2024 ($19 and up select styles, 40% off everything else)




January 29, 2024 ($19 and up select styles, 40% off everything else)




February 3, 2024 (60% off valentine's day edit, 40% off everything else)




February 10, 2024 ($29 and up select styles, 40% off everything else)





Milberg Coleman Bryson Phillips Grossman PLLC
280 South Beverly Drive, PH
Beverly Hills, CA 90212

February 17, 2024 ($29 and up select styles, up to 40% off everything else)

Up to 40% Off Everything Else* - code: EQOMG

February 27, 2024 (60% off select styles, up to 50% off everything else)

Up to 50% Off Everything Else* - code: EQTRENDING

March 3, 2024 ($29 and up select styles, up to 40% off everything else)

Up to 40% Off Everything Else* - code: EQMARCH

March 12, 2024 (50% off select styles, up to 40% off everything else)

Up to 40% Off Everything Else* - code: EQSPECIAL

March 19, 2024 (50% off select styles, up to 40% off everything else)

Up to 40% Off Everything Else* - code: EQMAJOR

March 28, 2024 (40% off 1 item, 50% off 2+ items)

50% Off 2+ Items, 40% Off 1* - code: EQSECRET

April 2, 2024 (up to 50% off new arrivals, up to 50% off everything else)

Up to 50% Off Everything Else* - code: EQHURRY

April 8, 2024 (60% off select styles, up to 40% off everything else)

Up to 40% Off Everything Else* - code: EQAPRIL

April 10, 2024 ($29 and up select styles, up to 40% off everything else)

Up to 40% Off Everything Else* - code: EQDREAMY

**B. Defendant's Emails to Plaintiff and Class Members Violate CEMA and the CPA.**

31. Washington's CEMA regulates deceptive email marketing. CEMA prohibits the sending of a commercial email that "[c]ontains false or misleading information in the subject line." RCW 19.190.020.

32. Violating this provision of CEMA also violates the CPA. RCW 19.190.030.

33. Advertising fake discounts in the subject line of a promotional email, with fake time pressure, violates CEMA and, accordingly, the CPA. *Brown v. Old Navy LLC*, 567 P.3d 38 (Wash. 2025).

34. Defendant's email advertisements contain subject lines that misstate the duration of the purported sales and misstate the discount that recipients would purportedly receive for purchasing during the sale. As a result, these promotional emails contain false or misleading information in the subject line, in violation of CEMA and the CPA.

35. Defendant sends these emails for the purpose of promoting the Products for sale and to drive sales to the website.

36. Defendant's email subject lines stating the supposed duration of its sales are false and misleading because, as discussed above, sales are almost always available.

37. Defendant's email subject lines stating the purported discount recipients will receive if recipients purchase during the sale are false and misleading because, as discussed above, consumers do not truly receive the advertised discounts. Instead, because substantial discounts are most commonly available, the purported discount is really much smaller (or no discount at all).

38. By misrepresenting the duration of its purported sales and the amount of its purported discounts in email subject lines, Defendant creates a false sense of urgency. Recipients who read the email subject lines believe that if they act now, they can purchase a higher value item at a limited-time discount; but if they wait, then the discount will expire and if they want to purchase a Product they will have to pay the former or regular price.

39. Defendant designs the subject lines of the promotional emails to induce recipients to make a purchase during the supposedly limited-time sales. Defendant's email subject lines often

contain words spurring recipients to make purchases immediately before time runs out. But because the Products are regularly on sale, each of these email subject lines that state that the sale is ending soon are false and misleading.

40. Defendant is constantly sending commercial emails to recipients on the website's mailing list, typically multiple times per week. Plaintiff and Class members received such emails from Defendant, many of which include false or misleading subject lines regarding fake discounts with fake time limitations. On information and belief, Defendant sent at least thousands of emails to Washington recipients with similar false or misleading subject lines.

41. Defendant knows, or has reason to know, its emails containing false and misleading subject lines are sent to Washington residents. Defendant knows where recipients of its emails reside for at least the following reasons.

a. For consumers who made a purchase on Defendant's website, Defendant has physical addresses associated with the recipient's name, email address, and order.

b. Defendant has access to data regarding the recipient's state of residence, such as geolocation and IP address tracking in Defendant's promotional emails. On information and belief, Defendant can track the IP addresses of persons who open and click on emails. It is a standard business practice among major e-commerce companies to employ email marketing tools (like tracking pixels) which allow the sender to identify the person opening and clicking on the email, including by IP address. And IP addresses can be used to confirm the user's physical location including city, state, and zip code.[1] To that end, the Privacy Policy for Eloquii.com currently states: "We use Google Ads and Facebook Pixel to serve ads following your visit to our Services and track your interactions with those ads." It further states: "We also collect your IP address,

[1] See https://nordvpn.com/ip-lookup/ ("Looking up an IP address shows you the geolocation of that IP address, including the country, state, city, and zip code.")

which may allow us to determine your location, including to determine your mailing address."

c. Defendant has access to granular location information tied to email addresses from commercial data brokers like Oracle, Equifax, and Lexis. Defendant can purchase consumer data from these brokers which connects individuals to email addresses, state of residence, and physical location. To that end, Defendant's Privacy Policy currently states: "In order to better provide you with our Services, we may collect information as follows . . . From third parties: Information about your interests, contact information, demographic information, and marketing inferences, from third party sources that provide consumer data, social networks and other sources of publicly available data."

d. Defendant may obtain information that some recipients of marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. See RCW 19.190.020(2).

e. Defendant had reason to know the marketing emails were sent to Washington residents based on the extremely high volume of outbound marketing emails which are continuously sent to everyone on the Eloquii.com mailing list.

42. Defendant also knows what sales it is offering and knows that, in truth, it always or almost always offers sales, and the sales are not truly ending soon.

43. Defendant's commercial emails containing false and misleading information about fake sales clog up inboxes with spam email, waste limited data space, and violate Plaintiff's and putative class members' statutory right to be free from deceptive commercial emails.

**C. <u>Defendant's Deceptive Emails Violate Federal Law.</u>**

44. The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, discounting

schemes like that employed in Defendant's email subject lines are deceptive practices that violate the FTCA.

45. Pursuant to 16 C.F.R. § 233.1, entitled Former Price Comparisons:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the *former price* is the actual, bona fide price at which the article was offered to the public on a *regular basis* for a *reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an *artificial, inflated price* was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.
>
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a *reasonably substantial period of time*, in the *recent*, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.
>
> (c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" *This is obviously a false claim*. The advertised "bargain" is not genuine.
>
> (d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he *never offered the article at all*; he might feature a price which was *not used in the regular course of business*, or which was *not used in the recent past* but at some *remote period in the past*, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was *not maintained for a reasonable length of time*, but was immediately reduced.
>
> (e) If the former price is set forth in the advertisement, *whether accompanied or not* by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. *It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An*

*advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.*

46. Additionally, FTC regulations prohibit false and misleading claims regarding the duration and expiration of sales, like those employed in the subject lines of Defendant's emails. Indeed, retailers "should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a 'limited' offer which, in fact, is not limited." 16 C.F.R. § 233.5.

**D. Research Confirms That Time-Limited Discounts Influence Consumer Behavior and Perceptions of Value.**

47. Studies and articles support the effectiveness of Defendant's deceptive email scheme.

48. For example, a study regarding the effect of the time-limited advertisement "10 Hours Only Super Sale" concluded that "[t]he willingness to buy was significantly higher" and "the attitude towards the deal was more favourable."[2]

49. An article explains that, in a test case, the addition of countdown timers increased conversion rates "from ~3.5% to ~10%."[3]

50. Another article explains: "We compared the performance to previous 'big sale' campaigns featuring a similar single-minded design, but without the countdown timer. The uplift was impressive showing . . . 400% higher conversion rate" with countdown timer.[4]

51. Accordingly, research confirms that deceptive discount advertising is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value

---

[2] Aggarwal, P., *Use it or lose it: Purchase acceleration effects of time-limited promotions*, Journal of Consumer Behaviour (Sept. 17, 2002) at 399-401.

[3] CXL, *How Creating a Sense of Urgency Increased Sales by 332%* (Feb. 28, 2023), at pp. 10-18, available at https://cxl.com/blog/creating-urgency.

[4] Upland Software, *Dynamic email content leads to 400% increase in conversions for Black Friday email*, available at https://uplandsoftware.com/adestra/resources/case-study/dynamic-email-content-leads-to-400-increase-in-conversions-for-black-friday-email/.

and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

E. **Plaintiff Vanessa Perdomo.**

52. Plaintiff Perdomo purchased clothing and apparel from Eloquii.com on September 2, 2024, August 5, 2024, April 9, 2023, February 8, 2023, and November 18, 2022. In making each of these purchases, she provided Defendant with her Washington physical address and email address.

53. Thus, at least as of November 18, 2022, Defendant knew that Plaintiff Perdomo was a resident of Washington and that any emails sent to Plaintiff Perdomo would be sent to a Washington resident.

54. Plaintiff Perdomo received each of the emails from Eloquii identified in paragraph 22, above.

55. The emails in paragraph 22 are representative examples. Plaintiff Perdomo received additional substantially similar emails from Eloquii.

56. Plaintiff Perdomo would like to receive truthful information from Defendant regarding its Products. Due to Defendant's conduct, Plaintiff cannot be certain which emails from Defendant contain truthful information and which emails are spam with false and misleading information in subject lines designed to spur consumers into making a purchase. Thus, without a court order requiring Defendant to only send honest emails about sales, Plaintiff cannot discern which emails are not false or misleading.

F. **No Adequate Remedy at Law.**

57. Plaintiff seeks an injunction. Plaintiff is permitted to seek an injunction because she has no adequate remedy at law. Legal remedies here are not adequate because they would not stop Defendant from continuing to transmit emails with false or misleading subject lines to Washington residents.

## V. CLASS ACTION ALLEGATIONS

58. Plaintiff brings the asserted claims on behalf of the following proposed class (the "Class"):



Milberg Coleman Bryson Phillips Grossman PLLC
280 South Beverly Drive, PH
Beverly Hills, CA 90212

All Washington residents who, during the Class Period, received promotional emails from Eloquii with subject lines advertising sales or discounts.

59. Plaintiff also proposes the following four subclasses:

All Washington residents who, during the Class Period, received promotional emails from Eloquii with subject lines stating: (1) a "__% off" sale was in effect; (2) a sale would expire soon or within a specific period when the same sale was extended; (3) a sale would expire soon or within a specific period when another sale was instituted after supposed expiration; or (4) "Open to confirm your order" when no order was placed.

60. Plaintiff reserves the right to propose additional subclasses based on specific subcategories of emails and Class members at class certification.

61. The Class Period is the time period beginning on the date established by the Court's determination of any applicable statute of limitations and ending on the date a class certification order is entered in this action. Thus, the statute of limitations begins no later than the date four years before this Complaint is filed.

62. The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; and (3) Plaintiff's counsel and Defendant's counsel.

***Numerosity***

63. The proposed Class contains members so numerous that separate joinder of each member of the class is impractical. There are at least thousands of Class members in Washington.

64. Class members can be identified through Defendant's electronic mailing lists, internal records, and public notice.

***Predominance of Common Questions***

65. There are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitation:

a. whether Defendant's email subject lines regarding purported discounts are false or misleading;

b. whether Defendant's email subject lines violate CEMA;

c. whether Defendant's email subject lines violate the CPA; and

d. the greater of actual damages or statutory damages due to Plaintiff and the proposed Class.

***Typicality & Adequacy***

66. Like members of the proposed Class, Plaintiff received emails from Defendant that contain false or misleading subject lines regarding Eloquii.com discounts.

67. There are no conflicts of interest between Plaintiff and the Class.

***Superiority***

68. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI. CLAIMS**

**Count 1: Violations of Washington's Commercial Electronic Mail Act**

**(By Plaintiff and the Class)**

69. Plaintiff incorporates each and every factual allegation set forth above and below.

70. Plaintiff brings this cause of action on behalf of herself and members of the Class.

71. Each Defendant is a "person" under CEMA. RCW 19.190.010(11).

72. As alleged more fully above, Defendant violated CEMA by initiating the transmission of commercial electronic mail messages that contained false or misleading information in the subject line to Plaintiff's and Class members' electronic mail addresses.

73. Defendant sent these emails to Plaintiff and Class members for the purpose of promoting the Products for sale.



Milberg Coleman Bryson Phillips Grossman PLLC
280 South Beverly Drive, PH
Beverly Hills, CA 90212

74. Defendant knew or had reason to know that it transmitted such emails to email addresses held by Washington residents, including Plaintiff.

75. Defendant's acts and omissions violated RCW 19.190.020(1)(b).

76. Defendant's acts and omissions injured Plaintiff and Class members.

77. The balance of equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, the members of the Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief. Defendant's unlawful behavior is ongoing as of the date of the filing of this pleading, so without the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

78. Plaintiff and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

**Count 2: Violations of the Washington Consumer Protection Act via Misleading Emails**

**(By Plaintiff and the Class)**

79. Plaintiff incorporates each and every factual allegation set forth above and below.

80. Plaintiff brings this cause of action on behalf of herself and members of the Class.

81. Plaintiff and Class members are "persons" within the meaning of the CPA. RCW 19.86.010(1).

82. As alleged above, Defendant violated CEMA by initiating the transmission of commercial electronic mail messages to Plaintiff and Class members that contained false or misleading information in the subject line.

83. A violation of CEMA is a per se violation of the CPA. RCW 19.190.030(1).

84. A violation of CEMA establishes all elements of the CPA as a matter of law.

85. As alleged more fully above, Defendant's transmission of commercial electronic messages to Plaintiff and Class members that contained false or misleading information in the subject line also violates the CPA because it constitutes unfair or deceptive practices that occur in trade or commerce.

***Unfair Acts or Practices***

86. As alleged in detail above, Defendant committed "unfair" acts by falsely stating in email subject lines that it was offering a discount off the regular prices of its Products, and that the discount was only available for a limited time, when none of this was true (or at minimum was highly misleading).

87. The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting whether the Products are discounted and misrepresenting the duration of sales. Plaintiff and the Class's injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumers only injures healthy competition and harms consumers.

***Deceptive Acts or Practices***

88. As alleged in detail above, Defendant's representations in email subject lines that the Products were on sale, that the sale was limited in time, and that customers were receiving substantial discounts, are deceptive.

89. Defendant's representations were likely to deceive, and did deceive, Plaintiff and other reasonable recipients. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

90. Defendant's unfair or deceptive acts or practices vitally affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.030(3); RCW 19.190.100.

91. Defendant's acts and omissions caused injury to Plaintiff and Class members. Violations of CEMA establish the injury and causation elements of a CPA claim as a matter of law. *See Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1002–04 (W.D. Wash. 2019) ("by alleging a CEMA violation of RCW 19.190.020, a plaintiff alleges all five elements of a CPA violation . . . . Of particular relevance, a plaintiff alleging a CEMA violation under RCW 19.190.030(1) need not allege injury or causation beyond the CEMA violation. . . . Moreover, the Washington Supreme Court recently held that CEMA's liquidated damages provision, RCW 19.190.040, establishes the injury and causation elements of a CPA claim as a matter of law.").

92. Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW 19.86.090.

93. Under the CPA, Plaintiff and Class members are entitled to and seek, and do seek, the greater of actual damages and statutory damages of $500 per email that violates CEMA. In addition, Plaintiff and Class members seek treble damages, which are permitted under the CPA, including for CEMA violations. Plaintiff seeks treble damages to further Plaintiff's and Class members' financial rehabilitation, encourage citizens to bring CPA actions, deter Defendant and other persons from committing CEMA violations, and punish Defendant for false and misleading advertising practices.

94. Plaintiff and Class members are also entitled to, and seek, injunctive relief prohibiting further violations of the CPA.

## VII. JURY DEMAND

95. Plaintiff demands the right to a jury trial on all claims so triable.

## VIII. PRAYER FOR RELIEF

96. Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- The greater of actual or statutory damages, treble damages, and punitive damages where applicable;
- Pre- and post-judgment interest;
- An injunction prohibiting the deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

Dated: August 18, 2025

Respectfully submitted,

By: /s/ Cody Hoesly
Cody Hoesly (WA Bar No. 41190)
choesly@bargsinger.com
BARG SINGER HOESLY PC
121 SW Morrison St., Ste. 600
Portland, OR 97204
Ph. (503) 241-3311

Alexander E. Wolf*
awolf@milberg.com
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
280 South Beverly Drive, PH
Beverly Hills, CA 90212
Tel: 872-365-7060

William J. Edelman*
wedelman@milberg.com
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: 771-474-1121

Tyler E. Ewigleben*
JENNINGS & EARLEY PLLC
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (501) 255-8569
tyler@jefirm.com

*Counsel for Plaintiff*

**Pro Hac Vice* applications forthcoming

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

August 18 2025 1:12 PM

PIERCE COUNTY CLERK
**NO: 25-2-10928-9**

**SUPERIOR COURT OF WASHINGTON FOR PIERCE COUNTY**
**CASE COVER SHEET / CIVIL CASE**

Case Title VANESSA PERDOMO VS. FULLBEAUTY BRANDS OPERATIONS LLC
Case Number 25-2-10928-9
Atty/Litigant Cody Hoesly
Bar# 41190 Phone (503) 241-8521
Address 121 SW Morrison St Ste 600
City PORTLAND State OR Zip Code 97204
Email Address ____

Please check one category that best describes this case for indexing purposes.
***If you cannot determine the appropriate category, Please describe the cause of action below. This will create a Miscellaneous cause which is not subject to PCLR 3.***

**APPEAL / REVIEW**
___Administrative Law Review (ALR 2) REV 6
___Civil, Non-Traffic (LCA 2) REV 6
___Civil, Traffic (LCI 2) REV 6
___Land Use Petition (LUP 2) LUPA

**CONTRACT / COMMERCIAL**
___Breach of Contract, Commercial Non-Contract or Commercial-Contract (COM 2) STANDARD
___Third Party Collection (COL 2) REV 4

**JUDGEMENT**
___Judgement, Another County or Abstract Only (ABJ 2) Non PCLR
___Transcript of Judgement (TRJ 2) Non PCLR
___Foreign Judgement Civil or Judgement, Another State (FJU 2) Non PCLR

**TORT / MOTOR VEHICLE**
___Death, Non-Death Injuries or Property Damage Only (TMV 2) STANDARD

**TORT / NON MOTOR VEHICLE**
___Other Malpractice (MAL 2) COMPLEX
___Personal Injury (PIN 2) STANDARD
___Property Damage (PRP 2) STANDARD
___Wrongful Death (WDE 2) STANDARD
___Other Tort, Products Liability or Asbestos (TTO 2) COMPLEX

**PROPERTY RIGHTS**
___Condemnation (CON 2) STANDARD
___Foreclosure (FOR 2) REV 4
___Property Fairness (PFA 2) STANDARD
___Quiet Title (QTI 2) STANDARD
___Unlawful Detainer / Eviction (UND 2) REV 4
___Unlawful Detainer / Contested (UND 2) REV 4

**OTHER COMPLAINT OR PETITION**
___Compel/Confirm Bind Arbitration, Deposit of Surplus Funds, Interpleader, Subpoenas, Victims' Employment Leave, or Wireless Number Disclosure, Miscellaneous (MSC 2) REV 4
___Injunction (INJ 2) REV 4
___Malicious Harassment (MHA 2) Non PCLR
___Meretricious Relationship (MER 2) REV 4
___Minor Settlement/No Guardianship (MST2) REV 4
___Pet for Civil Commit/Sex Predator (PCC2) REV 4
___Property Damage Gangs (PRG 2) REV 4
___Relief from Duty to Register (RDR) REV 12
___Restoration of Firearm Rights (RFR 2) REV 4
___Seizure of Property/Comm. of Crime (SPC2) REV 4
___Seizure of Property Result from Crime (SPR2) REV 4
___Trust/Estate Dispute Resolution (TDR2) REV 12
___Restoration of Opportunity (CRP) REV 4

**TORT / MEDICAL MALPRACTICE**
___Hospital, Medical Doctor, or Other Health Care Professional (MED2) COMPLEX

**WRIT**
___Habeas Corpus (WHC 2) REV 4
___Mandamus (WRM 2) REV 4
___Review (WRV 2) REV 4
___Miscellaneous Writ (WMW 2) REV 4

**MISCELLANEOUS**____

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

August 18 2025 1:12 PM

PIERCE COUNTY CLERK
**NO: 25-2-10928-9**

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR PIERCE COUNTY**

VANESSA PERDOMO
Plaintiff(s)

Vs.

FULLBEAUTY BRANDS OPERATIONS LLC
Defendant(s)

No. 25-2-10928-9
ORDER SETTING CASE SCHEDULE

| | |
|---|---|
| Type of case: | CPA |
| Estimated Trial (days): | |
| Track Assignment: | Standard |
| Assignment Department: | 08 |
| Docket Code: | **ORSCS** |

| | |
|---|---|
| Confirmation of Service - All Parties Served | 9/15/2025 |
| Confirmation of Joinder of Parties, Claims and Defenses | 12/15/2025 |
| Jury Demand | 12/22/2025 |
| Plaintiff's/Petitioner's Disclosure of Primary Witnesses | 2/9/2026 |
| Defendant's/Respondent's Disclosure of Primary Witnesses | 3/9/2026 |
| Disclosure of Rebuttal Witnesses | 4/27/2026 |
| Deadline for Filing Motion to Adjust Trial Date | 5/25/2026 |
| Discovery Cutoff | 6/29/2026 |
| Exchange of Witness and Exhibit Lists and Documentary Exhibits | 7/13/2026 |
| Deadline to file Certificate or Declaration re: Alternative Dispute Resolution | 7/20/2026 |
| Deadline for Hearing Dispositive Pretrial Motions | 7/20/2026 |
| Joint Statement of Evidence | 7/20/2026 |
| Pretrial Conference | Week of 8/3/2026 |
| Trial | 8/17/2026 9:00 |

**NOTICE TO PLAINTIFF/PETITIONER**

If the case has been fields, the plaintiff shall serve a copy of the Case Schedule on the defendant(s) with the summons and complaint/ petition: Provided that in those cases where service is by publication the plaintiff shall serve the Case Schedule within five (5) court days of service of the defendant's first response/appearance. If the case has not been filed, but an initial pleading is served, the Case Schedule shall be served within five (5) court days of filing. See PCLR 3.

A FREE LINX account is required in order to access electronic services (including e-filing, e-service, order submissions, etc). You can setup your free LINX account here: **https://www.piercecountywa.gov/374/E-Filing**

**NOTICE TO ALL PARTIES**

All attorneys and parties shall make themselves familiar with the Pierce County Local Rules, particularly those relating to case scheduling. Compliance with the scheduling rules is mandatory and failure to comply shall result in sanctions appropriate to the violation. If a statement of arbitrability is filed, PCLR 3 does not apply while the case is in arbitration.

Dated: August 18, 2025

Judge Grant Blinn
Department 08